**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

SOUPER PRODUCTS, LLC,

Plaintiff,

v.

THE INDIVIDUALS, CORPORATIONS, LIMITED LIABILITY COMPANIES, PARTNERSHIPS, AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A TO THE COMPLAINT,

Defendants.

Case No.: 1:26-cv-03757

# MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S EX PARTE APPLICATION FOR ENTRY OF AN ORDER TO SHOW CAUSE WITH A TEMPORARY RESTRAINING ORDER, INCLUDING A TEMPORARY ASSET RESTRAINT, AN ORDER FOR EXPEDITED DISCOVERY, AND GRANTING PERMISSION TO EFFECTUATE SERVICE OF PROCESS BY E-MAIL AND ELECTRONIC PUBLICATION

# TABLE OF CONTENTS


Page

I. INTRODUCTION AND SUMMARY OF ARGUMENT ............ 1

II. RELEVANT FACTS ............ 3

A. Plaintiff's Intellectual Property Protects Its Successful SOUPER CUBES Brand. 3

B. Defendants Are Counterfeiters of SOUPER CUBES Products. ............ 5

III. ARGUMENT ............ 10

A. This Court May Exercise Personal Jurisdiction Over Defendants. ............ 12

B. Standard for Temporary Restraining Order and Preliminary Injunction. ............ 14

C. Plaintiff Will Likely Succeed on the Merits. ............ 14

D. There Is No Adequate Remedy at Law, and Plaintiff Will Suffer Irreparable Harm in the Absence of Preliminary Relief. ............ 18

E. The Balancing of Equities Tips in Plaintiff's Favor. ............ 23

F. Issuance of the Injunction Is in the Public Interest. ............ 24

IV. THE EQUITABLE RELIEF SOUGHT IS APPROPRIATE ............ 25

A. A Temporary Restraining Order Immediately Enjoining Defendants' Unlawful Use of Plaintiff's Intellectual Property Is Appropriate. ............ 25

B. Preventing the Fraudulent Transfer of Assets Is Appropriate. ............ 26

C. Plaintiff Is Entitled to Expedited Discovery. ............ 28

D. Service of Process by E-mail and/or Electronic Publication Is Warranted in this Case. ............ 30

V. A MODEST BOND SHOULD SECURE THE INJUNCTIVE RELIEF ............ 38

VI. CONCLUSION ............ 38

## TABLE OF AUTHORITIES

**Cases**

*3M Co. v. Performance Supply, LLC*,
458 F. Supp. 3d 181 (S.D.N.Y. 2020) .......... 14, 19, 23

*ABC v. DEF*,
2024 WL 5168624 (S.D.N.Y. Dec. 13, 2024) .......... 37

*adMarketplace, Inc. v. Tee Support Inc.*,
No. 13-cv-5635(LGS), 2013 WL 4838854 (S.D.N.Y. Sept. 11, 2013) .......... 29

*Aevoe Corp. v. AE Tech Co., Ltd.*,
2012 WL 760692 (D. Nev. Mar. 7, 2012) .......... 22

*Allstar Marketing Group, LLC v. 53 Romantic House Store*,
2020 WL 6700481 (S.D.N.Y. Nov. 13, 2020) .......... 2, 12

*Allstar Marketing Group, LLC v. BackforthTradeltd*,
2020 WL 6700503 (S.D.N.Y. Nov. 12, 2020) .......... 2, 12

*Am. Girl, LLC v. Zembrka*,
118 F.4th 271 (2d Cir. 2024) .......... 13

*Animale Grp. Inc. v. Sunny's Perfume Inc.*,
256 F. App'x 707 (5th Cir. 2007) .......... 27, 28

*Apple Inc. v. Samsung Elecs. Co.*,
735 F.3d 1352 (Fed. Cir. 2013) .......... 21

*Aria Diagnostics, Inc. v. Sequenom, Inc.*,
726 F.3d 1296 (Fed. Cir. 2013) .......... 20

*Balenciaga America, Inc. et al., v. Sean Dollinger et al.*,
2010 WL 3952850 (S.D.N.Y. Oct. 8, 2010) .......... 27

*BBK Tobacco & Foods, LLP v. Galaxy VI Corp.*,
408 F. Supp. 3d 508 (S.D.N.Y. 2019) .......... 15

*Burger King Corp. v. Majeed*,
805 F. Supp. 994 (S.D. Fla. 1992) .......... 23

*Bushnell, Inc. v. Brunton Co.*,
673 F. Supp. 2d 1241 (D. Kan. 2009) .......... 22

*Celsis In Vitro, Inc. v. CellzDirect, Inc.*,
664 F.3d 922 (Fed. Cir. 2012) .......... 20, 24

*Cengage Learning, Inc. v. Doe 1*,
2018 WL 2244461 (S.D.N.Y. Jan. 17, 2018) ........ passim

*Chloe v. Queen Bee of Beverly Hills, LLC*,
616 F.3d 158 (2d Cir. 2010) ........ 13

*CJ Prods v. Concord Toys*,
10–cv–5712 (ENV)(JO), 2011 WL 178610 (E.D.N.Y. Jan. 19, 2011) ........ 24

*CJ Products LLC v. Snuggly Plushez LLC*,
809 F. Supp. 2d 127 (E.D.N.Y. Aug. 22, 2011) ........ 19

*El Greco Leather Prods. Co., Inc. v. Show World*,
806 F.2d 392 (2d Cir. 1986) ........ 19

*Envirocare Techs., LLC v. Simanovsky*,
2012 WL 2001443 (E.D.N.Y. June 4, 2012) ........ 13

*Estee Lauder, Inc. v. Watsky*,
323 F. Supp. 1064 (S.D.N.Y. 1970) ........ 23

*Fendi Adele S.R.L. v. Filene's Basement, Inc*.,
696 F.Supp.2d 368 (S.D.N.Y. 2010) ........ 15

*Google LLC v. Doe 1*,
No. 25-cv-10440 (JSR), 2026 WL 353660 (S.D.N.Y. Feb. 9, 2026) ........ 30, 31, 35

*Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund*,
527 U.S. 308 (1999) ........ 27

*Gucci America, Inc. v. Weixing Li*,
2011 WL 6156936 (S.D.N.Y. Aug. 23, 2011) ........ 27

*Guthrie Healthcare Sys. v. ContextMedia, Inc.*,
826 F.3d 27 (2d Cir. 2016) ........ 15

*Hermes Int'l v. Lederer de Paris Fifth Ave., Inc.*,
219 F.3d 104 (2d Cir. 2000) ........ 24

*Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*,
174 F.3d 411 (4th Cir. 1999) ........ 38

*In re Vuitton et Fils*, *S.A.*,
606 F.2d 1 (2d Cir. 1979) ........ 2

*Int'l Inc. v. Holland Elecs. LLC*,
2016 WL 4373941 (Fed. Cir. Aug. 16, 2016) ........ 21

*Intersell Ventures, LLC v. 1688 Factory Direct Store Store*,
2025 WL 485715 (S.D.N.Y. Feb. 11, 2025)............................................................... 37

*Kelly Toys Holdings, LLC. v. Top Dep't Store*,
2022 WL 3701216 (S.D.N.Y. Aug. 26, 2022)........................................................ 30, 31, 35

*Kipling Apparel Corp. v. Rhys*,
2016 WL 8814345 (S.D.N.Y. Feb. 19, 2016)..................................................... 2, 12, 26, 38

*Klipsch Grp., Inc. v. Big Box Store Ltd.*,
2012 WL 4901407 (S.D.N.Y. Oct. 11, 2012)............................................................. 27

*Krause Int'l Inc. v. Reed Elsevier, Inc.*,
866 F. Supp. 585 (D.D.C. 1994)............................................................................. 23

*Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*,
51 F.3d 982 (11th Cir. 1995) ............................................................................... 27, 28

*Lifeguard Licensing Corp. v. Ann Arbor T-Shirt Co., LLC*,
2016 WL 3748480 (S.D.N.Y. July 8, 2016)............................................................. 13

*Lindsey Adelman Studio, LLC v. ZORA Lighting Co., Ltd.*,
2019 WL 7599931, (S.D.N.Y. May 29, 2019) ...................................................... 2, 11, 12, 26

*Mahmood v. Nielsen*,
312 F. Supp. 3d 417 (S.D.N.Y. 2018) .................................................................... 14

*Malarkey-Taylor Assocs., Inc. v. Cellular Telecomms. Indus. Ass'n*,
929 F. Supp. 473 (D.D.C. 1996)............................................................................. 23

*Mattel, Inc. v. AnimeFun Store*,
2021 WL 765766 (S.D.N.Y. Feb. 26, 2021)............................................................. 18

*N.Y.C. Triathlon, LLC v. NYC Triathlon Club, Inc.*,
704 F. Supp. 2d 305 (S.D.N.Y. 2010) ................................................................ 19, 24

*Natera, Inc. v. NeoGenomics Labs., Inc.*,
106 F.4th 1369 (Fed. Cir. 2024) ............................................................................ 20

*Next Phase Distrib., Inc. v. John Does 1–27*,
284 F.R.D. 165 (S.D.N.Y. 2012)............................................................................ 29

*Nike, Inc. v. Fujian Bestwinn Indus. Co., Ltd.*,
166 F. Supp. 3d 1177 (D. Nev. 2016)................................................................ 21, 22

*NYP Holdings v. N.Y. Post Publ'g Inc.*,
63 F. Supp. 3d 328 (S.D.N.Y. 2014) .............................................................. 19, 22, 24

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*,
2007 WL 869576 (E.D. Tex. Mar. 21, 2007) .......... 22

*Otter Prods., LLC v. Anke Grp. Indus. Ltd.*,
WL 5910882 (D. Nev. Jan. 8, 2013).......... 20, 22

*Parfum Francis Kurkdjian SAS v. Dongguan Laiqu Gems Handcraft Co., ltd*,
2025 WL 1276618 (S.D.N.Y. Apr. 29, 2025) .......... 37

*Philip Morris USA Inc. v. Felizardo*,
2004 WL 1375277 (S.D.N.Y. June 18, 2004) .......... 18

*Polaroid Corp. v. Polarad Electronics Corp.*,
287 F.2d 492 (2d Cir. 1961) .......... 15

*Rathmann Grp. v. Tanenbaum*,
889 F.2d 787 (8th Cir. 1989) .......... 38

*Reebok Int'l Ltd. v. J. Baker, Inc.*,
32 F.3d 1552 (Fed. Cir. 1994) .......... 21

*Reebok Int'l Ltd. v. Marnatech Enters., Inc.*,
970 F.2d 552 (9th Cir. 1992) .......... 27, 28

*Rio Props., Inc. v. Rio Int'l Interlink*,
284 F.3d 1007 (9th Cir. 2002) .......... 30, 35, 36

*Robert Bosch LLC v. Pylon Manufacturing Corp.*,
659 F.3d 1142 (Fed. Cir. 2011) .......... 20, 22

*Rovio Ent., Ltd. v. Allstar Vending, Inc.*,
97 F. Supp. 3d 536 (S.D.N.Y. 2015) .......... 23

*Salvatore Ferragamo S.p.A. v. Does 1-56*,
2020 WL 774237 (S.D.N.Y. Feb. 18, 2020).......... 17, 18, 19, 23

*Shashi, Inc.v. Ramada Worldwide, Inc.*,
2005 WL 552593 (W.D. Va. Mar. 1, 2005) .......... 24

*Spin Master Ltd., v. Alan Yuan's Store*,
325 F. Supp. 3d 413 (S.D.N.Y. 2018) .......... 15, 17, 18

*Topps Co., Inc. v. Gerrit J. Verburg Co.*,
1996 WL 719381 (S.D.N.Y. Dec. 13, 1996) .......... 15

*Weili Fang and Chee Ray, LLC v. Hangzhou Jiayu Wenhua Chuanmei Youxian Gongsi*,
2021 WL 1249631 (S.D.N.Y. April 5, 2021) .......... passim

*WowWee Group Ltd. v. Haoqin*,
2019 WL 1316106 (S.D.N.Y. Mar. 22, 2019) ........ 35

*WPIX, Inc. v. ivi, Inc.*,
691 F.3d 275 (2d Cir. 2012) ........ 23

*Zuru (Singapore) Pte., Ltd. v. The Individuals, Corporations, Limited Liability Companies, Partnerships, and Unincorporated Associated Identified on Schedule A Hereto*,
2022 WL 14872617 (S.D.N.Y. Oct. 26, 2022) ........ 32

**Statutes**

15 U.S.C. § 1051 et seq. ........ 12

15 U.S.C. § 1057(b) ........ 16

15 U.S.C. § 1114(1) ........ 14

15 U.S.C. § 1117(a) ........ 3, 27

15 U.S.C. § 1125(a) ........ 17

28 U.S.C. § 1331 ........ 12

28 U.S.C. § 1367(a) ........ 12

28 U.S.C. § 1391 ........ 12

28 U.S.C. §§ 1338(a)-(b) ........ 12

**Other Authorities**

5 J. Thomas McCarthy,
*McCarthy on Trademarks and Unfair Competition* (4th ed. 2013) ........ 28

Hague Conv., Art. 15 ........ 36

**Rules**

C.P.L.R. § 302(a)(1) ........ 12, 13

C.P.L.R. § 302(a)(3) ........ 12

Fed. R. Civ. P. 26(b)(2) ........ 29

Fed. R. Civ. P. 26(d)(1) ........ 29

Fed. R. Civ. P. 4(b) ........ 37

Fed. R. Civ. P. 4(f)(3) ........ 30, 37

Fed. R. Civ. P. 4(k) ........ 12, 35, 36

Fed. R. Civ. P. 65(b) ........ 11

Fed. R. Civ. P. 65(b)(1) ........ 14

Fed. R. Civ. P. 65(c) ........ 38

## I. INTRODUCTION AND SUMMARY OF ARGUMENT

This application (the "Application") arises from Defendants'[1] improper marketing and sale of counterfeit products online. Plaintiff, SOUPER PRODUCTS, LLC ("Plaintiff"), creates and markets high-quality freezing trays, utensils as well as kitchen housewares and accessories (the "SOUPER CUBES Products"). The SOUPER CUBES Products incorporate Plaintiff's trademarks which are covered by U.S. Trademark Registration Nos. 5,545,717, and 6,850,254 (the "SOUPER CUBES Trademarks"), and/or embody the design(s) of Plaintiff's design patents covered by US D887,460 S, US D905,133 S, US D906,379 S, US D1,021,979 S, US D1,028,022 S, US D1,028,023 S, US D1,028,024 S, US D1,033,486 S, and US D1,034,715 S (the "SOUPER CUBES Patents", together with the SOUPER CUBES Trademarks, the "SOUPER CUBES IP").

Defendants have violated Plaintiff's intellectual property rights by promoting, advertising, marketing, distributing, offering for sale, and selling counterfeit versions of the SOUPER CUBES Products. As the examples below and in the Complaint make clear, this is not a close case; Defendants are blatantly infringing the SOUPER CUBES IP and selling knock-off SOUPER CUBES Products as if they were genuine. This illicit conduct is being carried out through various online marketplace accounts listed in **Schedule A** to the Complaint (collectively, the "Defendant Internet Stores").

As is common with these sorts of ecommerce counterfeiters, Defendants attempt to avoid liability by concealing both their identities and the full scope and interworking of their counterfeiting operations. Plaintiff has filed this action to combat Defendants' infringement and counterfeiting of Plaintiff's registered trademarks and patents, as well as to protect consumers from unknowingly purchasing counterfeit SOUPER CUBES Products over the internet. In that regard,

[1] The Defendants are a collection of foreign ecommerce counterfeiters, identified in Schedule A attached to the Complaint.

Plaintiff seeks to enjoin Defendants' ongoing unlawful activities, and Plaintiff respectfully requests that this Court issue *ex parte* relief, including:

(1) a temporary restraining order against Defendants, enjoining Defendants from the manufacture, importation, distribution, offering for sale, and sale of counterfeit and infringing products bearing, using, embodying, or otherwise infringing upon Plaintiff's SOUPER CUBES IP (the "Infringing Products");

(2) a temporary restraint of certain Defendants' assets, described below, to preserve Plaintiff's right to an equitable accounting;

(3) expedited discovery allowing Plaintiff to inspect and copy Defendants' records relating to the manufacture, distribution, offering for sale, and sale of Infringing Products, as well as of Defendants' financial accounts;

(4) permission to effectuate service by electronic mail and electronic publication; and

(5) an order against Defendants to show cause why a preliminary injunction should not issue on the return date of the Application.

In light of the covert nature of offshore counterfeiting activities being undertaken by Defendants and the vital need to establish an economic disincentive for counterfeiting, courts regularly issue orders awarding such relief.[2]

Plaintiff's well-pleaded allegations, which are supported by the Declarations submitted in connection with this Application, make clear that such relief is necessary and proper. First, Plaintiff has demonstrated a strong likelihood of success on the merits. Plaintiff is the owner of the valid SOUPER CUBES IP and is the distributor of genuine SOUPER CUBES Products. Defendants'

---

[2] *See, e.g.*, *Lindsey Adelman Studio, LLC v. ZORA Lighting Co.*, No. 1:19-cv-04715, 2019 WL 7599931, (S.D.N.Y. May 29, 2019); *Cengage Learning, Inc. v. Doe 1*, No. 18-cv-403 (RJS), 2018 WL 2244461 (S.D.N.Y. Jan. 17, 2018); *Allstar Marketing Group, LLC v. BackforthTradeltd,* 20-cv-9073 (PAE), 2020 WL 6700503 (S.D.N.Y. Nov. 12, 2020); *Kipling Apparel Corp. v. Rhys,* No. 16-cv-990 (RJS), 2016 WL 8814345 (S.D.N.Y. Feb. 19, 2016); *Weili Fang and Chee Ray, LLC v. Hangzhou Jiayu Wenhua Chuanmei Youxian Gongsi*, No. 21-cv-00370, 2021 WL 1249631 (S.D.N.Y. April 5, 2021); *Allstar Marketing Group, LLC v. 53 Romantic House Store*, 20-cv-9072 (PAE), 2020 WL 6700481 (S.D.N.Y. Nov. 13, 2020); *In re Vuitton et Fils*, *S.A.*, 606 F.2d 4 (2d Cir. 1979) (holding that *ex parte* temporary restraining orders are indispensable to the commencement of an action when they are the sole method of preserving a state of affairs in which the court can provide effective final relief).

unauthorized use of Plaintiff's trademarks and patents to sell Infringing Products has and continues to irreparably harm Plaintiff by diminishing Plaintiff's goodwill in its products, damaging Plaintiff's reputation, and causing consumer confusion. Monetary damages are inadequate to compensate Plaintiff for these harms. Defendants, by contrast, face no cognizable harm whatsoever if they are enjoined from continuing with their misconduct. This makes injunctive relief particularly appropriate.

Issuance of an injunction is also in the public interest because it will prevent confusion among the public and prevent unknowing consumers from being deceived into purchasing Infringing Products, in addition to promoting general respect for trademark and patent laws. The public has a right to know what it is purchasing.

Further, a prejudgment asset freeze is also proper since Plaintiff seeks an equitable remedy in the accounting of Defendants' profits pursuant to 15 U.S.C. § 1117(a). Finally, an order authorizing service of process by e-mail and electronic publication is appropriate due to Defendants' intentional efforts to conceal their identities and covertly operate their business online. Serving Defendants electronically is the best—likely the only—method for notifying them of this action and providing Defendants the opportunity to defend and present their objections.

Stated simply, the relief sought in this action is necessary to protect Plaintiff's legitimate interests in the SOUPER CUBES Trademarks, SOUPER CUBES Patents, and SOUPER CUBES Products. Accordingly, Plaintiff respectfully requests entry of their proposed order in its entirety.

## II. RELEVANT FACTS

### A. Plaintiff's Intellectual Property Protects Its Successful SOUPER CUBES Brand.

Plaintiff is a leading manufacturer of freezing trays, utensils, as well as kitchen housewares and accessories, and has earned an international reputation for quality, reliability and value.

Plaintiff is credited for many breakthroughs that have occurred in the industry, including its SOUPER CUBES Products. Plaintiff is the official source of SOUPER CUBES Products in the United States, which include, among others, silicone freezer trays in 2-cup, 1-cup, half cup and 2 tablespoon portion sizes.

The Company further distinguishes itself from others in the industry through its use of 100% FDA food-grade silicone, BPA-free trays and lids, extensive testing to ensure its products exceed food safety guidelines, and through its strong sales performance driven by its highly successful product releases, positioning Plaintiff as a recognized and influential force in the industry.

Since at least 2018, Plaintiff has designed, developed, and marketed high-quality freezing trays and kitchen accessories incorporating the SOUPER CUBES IP. *See* Declaration of Jacob Sendowski ("Sendowski Decl.") ¶ 9. The SOUPER CUBES Trademarks are and have been the subject of substantial and continuous marketing and promotion by Plaintiff. *Id.* Plaintiff has and continues to widely market and promote the SOUPER CUBES IP in the industry and to consumers. *Id.*

Since Plaintiff launched the SOUPER CUBES Products in 2018, the company has followed a defined strategy for positioning its brand, marketing, and promoting the product line in the industry and to consumers and establishing distribution channels. *Id.* Plaintiff's promotional efforts for the SOUPER CUBES Products include, by way of example but not limitation, the Souper Cubes website (https://soupercubes.com), substantial print media, social media sites, and point-of-sale materials. *Id.* Plaintiff has expended substantial time, money, and other resources in advertising and otherwise promoting the SOUPER CUBES Products. *Id* ¶ 10. Plaintiff has expended substantial time, money, and other resources in advertising and otherwise promoting the

SOUPER CUBES Products. *Id.*

The SOUPER CUBES Products have become enormously popular, driven by Plaintiff's arduous quality standards and innovative trademarked designs. *Id.* ¶¶ 6–8, 32. These designs are broadly recognized by consumers as being sourced from Plaintiff. *Id.* ¶ 10. Products fashioned after these designs are associated with the quality and innovation that the public has come to expect from Plaintiff and its SOUPER CUBES Products. *Id.*

Plaintiff owns all rights, including without limitation, the rights to reproduce the trademarked designs in copies, to prepare derivative works based upon the trademarked and patented designs, and to distribute copies of the trademarked and/or patented designs to the public by sale or other transfer of ownership, or by rental, lease, or lending, in the SOUPER CUBES IP as the owner of those trademarks and patents. *Id.* ¶¶ 4-5.

**B. <u>Defendants Are Counterfeiters of SOUPER CUBES Products.</u>**

The success of the SOUPER CUBES Products has resulted in significant counterfeiting. Sendowski Decl., ¶ 11. Plaintiff has identified numerous Defendant Internet Stores that sell Infringing Products from foreign countries to consumers in this Judicial District. *Id.*, ¶ 12. For example, here are some images of genuine SOUPER CUBES Products incorporating the SOUPER CUBES Trademark, which are marketed and sold by Plaintiff on Plaintiff's website.




And here are images of some counterfeits sold by the Defendants:






Internet websites like the Defendant Internet Stores contribute to the hundreds of billions of dollars of infringing goods sold each year and pose a threat to economic growth and innovation across the world. *See* Declaration of Christopher Tom ("Tom Decl."), ¶ 2 & Ex. 1. For instance, according to intellectual-property-rights seizures-statistics report issued by U.S. Customs and Border Protection, the manufacturer's suggested retail price of goods seized by the U.S. government in fiscal year 2024 was approximately $5.4 billion, and over $5 billion of seized goods came from China and Hong Kong alone. *Id.* ¶ 3 & Ex. 2.

1. Defendants Operate Legitimate-Looking Internet Stores.

Defendants typically facilitate sales by designing the Defendant Internet Stores so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers selling genuine SOUPER CUBES Products. Sendowski Decl., ¶ 21. Many of the Defendant

Internet Stores look sophisticated and accept payment in U.S. dollars via credit cards, Western Union, Amazon.com ("Amazon"), and PayPal.com ("PayPal"). *Id.* The Defendant Internet Stores often include images and design elements that make it very difficult for consumers to distinguish such counterfeit sites from an authorized website. *Id.* at ¶ 2. Plaintiff has not licensed or authorized Defendants to use the SOUPER CUBES Trademarks and SOUPER CUBES Patents and none of the Defendants is an authorized retailer of genuine SOUPER CUBES Products. *Id.* at ¶ 19.

2. Defendants Illegitimately Optimize the Defendant Internet Stores for Search Engines.

Defendants also deceive unknowing consumers by using the SOUPER CUBES Trademarks without authorization within the content, text, and/or meta tags of their websites to attract various search engines crawling the internet looking for websites relevant to consumer searches for SOUPER CUBES Products. Sendowski Decl., ¶ 23. Additionally, Defendants use other unauthorized search engine optimization ("SEO") tactics and social media spamming so that the listings for the Defendant Internet Stores show up at or near the top of relevant search results and misdirect consumers searching for genuine SOUPER CUBES Products. *Id.* Defendants often utilize similar illegitimate SEO tactics to propel new domain names to the top of search results after others are shut down. *Id.* Defendants also deceive unknowing consumers by using the SOUPER CUBES Trademarks without authorization within the product descriptions of their Defendant Internet Stores to attract customers. *Id.*

3. Defendants Conceal Their Identities.

Defendants go to great lengths to conceal their identities and often use multiple fictitious names and addresses to register and operate their massive network of Defendant Internet Stores. Sendowski Decl., ¶ 24. For example, many of Defendants' listed names and physical addresses are incomplete. *Id.* Other Defendant Internet Stores use privacy services that conceal the owners'

identities and contact information. *Id.* Defendants regularly create new websites and online marketplace accounts on various platforms using the identities listed in Schedule A to the Complaint, as well as other unknown fictitious names and addresses. *Id.* These are some of the many common tactics used by the Defendants to conceal their identities—and the full scope and interworking of their massive counterfeiting operation—to avoid being shut down. *Id.*

Even though Defendants operate under multiple fictitious names, there are numerous similarities among the Defendant Internet Stores. *Id.* ¶ 25. For example, the Infringing Products for sale in the Defendant Internet Stores bear similar irregularities and indicia of being counterfeit to one another, suggesting that the Infringing Products were manufactured by and come from common sources and that Defendants are interrelated. *Id.*

4. Defendants Evade Enforcement.

In addition to operating under multiple fictitious names, Defendants in this case and defendants in other similar cases against online counterfeiters use a variety of other common tactics to evade enforcement efforts. *See id.* ¶ 26. For example, counterfeiters like Defendants will often register new domain names or online marketplace accounts under new aliases once they receive notice of a lawsuit. *See id.* Counterfeiters also often move website hosting to rogue servers located outside the United States once notice of a lawsuit is received. *Id.* Rogue servers are notorious for ignoring take-down demands sent by brand owners. *Id.* Counterfeiters also typically ship products in small quantities via international mail to minimize detection by U.S. Customs and Border Protection. *Id.*

Additionally, counterfeiters such as Defendants typically operate multiple credit card merchant accounts as well as marketplace platform accounts behind layers of payment gateways so that they can continue operation in spite of enforcement efforts. *Id.* ¶ 27. Further, such

counterfeiters typically maintain offshore bank accounts and regularly move funds from their PayPal accounts to offshore bank accounts outside the jurisdiction of this Court. *Id.*

Overall, Plaintiff's well-pleaded allegations regarding registration patterns, similarities among the Defendant Internet Stores and the Infringing Products for sale thereon, and common tactics employed to evade enforcement establish a logical relationship among the Defendants suggesting that Defendants are an interrelated group of counterfeiters. Upon information and belief, Defendants actively consort to knowingly and willfully manufacture, import, distribute, offer for sale, and sell products in connection with counterfeit versions of the SOUPER CUBES Trademarks and SOUPER CUBES Patents in the same transaction, occurrence, or series of transactions or occurrences.

As indicated above, the tactics used by Defendants to conceal their identities and the full scope of their counterfeiting operation make it virtually impossible for Plaintiff to discover the true identities of the Defendants, the exact interworking of the Defendants' counterfeiting network, and the relationship among Defendants. In the event that Defendants provide additional credible information regarding their identities, Plaintiff intends to take appropriate steps to amend the Complaint.

## III. ARGUMENT

Defendants' purposeful, intentional, and unlawful conduct is causing, and will continue to cause, irreparable harm to Plaintiff's reputation and the goodwill symbolized by the SOUPER CUBES Trademarks and SOUPER CUBES Patents. *See id.* ¶¶ 29–32. To stop Defendants' sale of Infringing Products, Plaintiff respectfully requests that this Court issue a temporary restraining order directing, among other things, the stop of any listings or sale of products infringing upon the SOUPER CUBES IP and the freezing of Defendants' assets. Without the relief requested by

Plaintiff's Application, Defendants' unlawful activity will continue unabated, and Plaintiff and consumers will suffer irreparable harm.

Rule 65(b) of the Federal Rules of Civil Procedure provides that the Court may issue an *ex parte* temporary restraining order where immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition. Fed. R. Civ. P. 65(b). The Defendants here fraudulently promote, advertise, offer to sell, and sell goods in connection with counterfeits of the SOUPER CUBES IP via the Defendant Internet Stores. Defendants are creating a false association in the minds of consumers between the Defendants and Plaintiff by deceiving consumers into believing that the Infringing Products for sale on Defendants' websites are sponsored or endorsed by Plaintiff. The entry of a temporary restraining order is appropriate because it would immediately stop Defendants from benefiting from their wrongful use of the SOUPER CUBES IP and preserve the status quo until such time as a hearing can be held.

In the absence of a temporary restraining order without notice, Defendants can and likely will change to a new online store or platform and move any assets from U.S.-based bank accounts, including PayPal accounts. Courts have recognized that civil actions against counterfeiters present special challenges that justify proceeding on an *ex parte* basis. *See, e.g.*, *Weili Fang*, 2021 WL 1249631, at *2 ("If Defendants are given notice of Plaintiffs' application, they are likely to hide, conceal, transfer or otherwise dispose of their ill-gotten proceeds from their sales of counterfeit and infringing products."); *Lindsey Adelman Studio*, 2019 WL 7599931, at *2 ("Defendants may easily and quickly transfer the registrations for their internet domain name, or modify registration data and content, change hosts, and redirect traffic to other websites, thereby thwarting Plaintiffs' ability to obtain meaningful relief."). As such, Plaintiff respectfully requests that this Court issue

the requested *ex parte* temporary restraining order.

This Court has original subject matter jurisdiction over the trademark infringement and false designation of origin claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051 et seq., 28 U.S.C. §§ 1338(a)-(b), and 28 U.S.C. § 1331. This Court has original subject matter jurisdiction over the patent infringement claims arising under the patent laws of the United States pursuant to 35 U.S.C. § 1 *et seq.*, and 28 U.S.C. §§ 1331, 1338(a). This Court has jurisdiction over the unfair competition claim in this action that arises under the laws of the State of New York pursuant to 28 U.S.C. § 1367(a) because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391, 1400.

### A. <u>This Court May Exercise Personal Jurisdiction Over Defendants.</u>

Personal jurisdiction exists over Defendants in this Judicial District pursuant to C.P.L.R. § 302(a)(1) and C.P.L.R. § 302(a)(3), or in the alternative, Fed. R. Civ. P. 4(k) because the Defendant Internet Stores transacted business in New York by accepting orders of Infringing Products from and offer shipping to New York addresses located in this Judicial District. Courts in the Southern District of New York regularly exercise personal jurisdiction over websites using registered trademarks without authorization in connection with the offering for sale and selling of infringing and counterfeit merchandise to New York residents over the Internet. *Weili Fang,* 2021 WL 1249631, at *1; *BackforthTradeltd*, 2020 WL 6700503, at *1–2 (preliminary injunction order after granting TRO); *53 Romantic House Store*, 2020 WL 6700481, at *1–2 (preliminary injunction order after granting TRO); *Lindsey Adelman Studio*, 2019 WL 7599931, at *1; *Cengage Learning, Inc.*, 2018 WL 2244461, at *1; *Kipling Apparel Corp.*, 2016 WL 8814345, at *1–2. Similarly, this Court has exercised personal jurisdiction over defendants who have offered and

sold counterfeit and infringing products through third-party stores on online marketplaces such as Amazon, even though these stores have claimed they do not control their storefronts in the same manner independent websites do. *See Lifeguard Licensing Corp. v. Ann Arbor T-Shirt Co., LLC*, 15-cv-8459 (LGS), 2016 WL 3748480, at *3 (S.D.N.Y. July 8, 2016). Despite that alleged lack of control, courts can still assert jurisdiction over "internet sellers who use an internet storefront like Amazon" when such sellers are "commercial vendors who use it 'as a means for establishing regular business with a remote forum.'" *Id.* (quoting *Envirocare Techs., LLC v. Simanovsky*, 11–cv–3458 (JS)(ETB), 2012 WL 2001443 at *3 (E.D.N.Y. June 4, 2012)).

Further, the Second Circuit recently affirmed that courts in this Judicial District could exercise personal jurisdiction over an internet store based in China that accepted orders for counterfeit dolls to be shipped to New York under C.P.L.R. § 302(a)(1), even though the orders were later cancelled and the product was never shipped into New York. *Am. Girl, LLC v. Zembrka*, 118 F.4th 271, 276–77 (2d Cir. 2024). As that court explained, the "single act" requirement to establish personal jurisdiction in New York does not require actual shipment of a product to New York but only a transaction, even if that sale was later cancelled and refunded. *Id.* at 277–278 (clarifying that its decision in *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158 (2d Cir. 2010) did not depend on the shipment of good but "rather on the fact that a single act can potentially suffice for establishing personal jurisdiction" in New York).

As detailed in the Complaint and in the Sendowski Decl., Plaintiff's investigation into Defendants confirms that the Defendant Internet Stores permit Infringing Products to be sold and shipped to addresses in this Judicial District. *See* Sendowski Decl., ¶ 15. Exhibit 3 to the Sendowski Decl. contains copies of screenshots from each Defendant Internet Store reflecting the marketing and ability to order Infringing Products to the Southern District of New York. For that

reason alone, this Court can exercise personal jurisdiction over each of the Defendants.

### B. Standard for Temporary Restraining Order and Preliminary Injunction.

The standard for granting a temporary restraining order and the standard for granting a preliminary injunction are identical. *3M Co. v. Performance Supply, LLC*, 458 F. Supp. 3d 181, 191 (S.D.N.Y. 2020) (citing *Mahmood v. Nielsen*, 312 F. Supp. 3d 417, 421 (S.D.N.Y. 2018)). A party seeking to obtain either must demonstrate: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm in the absence of an injunction; (3) that the balance of hardships favors the plaintiff; and (4) that the public interest will not be disserved if an injunction issues. *Id*.

When a party requests an *ex parte* temporary restraining order, the "Court must also determine whether '(A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition,' and '(B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.'" *Cengage Learning*, 2018 WL 2244461, at *1 (quoting Fed. R. Civ. P. 65(b)(1)).

### C. Plaintiff Will Likely Succeed on the Merits.

#### 1. Plaintiff Is Likely Succeed on Its Trademark Infringement and Counterfeiting Claim.

Defendants are liable for trademark infringement and counterfeiting under the Lanham Act if they, "without the consent of the registrant . . . use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods . . . which such use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1). Courts analyze trademark infringement claims under the Lanham Act under a two-prong test: (1) whether the plaintiff's mark is entitled to protection and (2) whether defendant's use of the mark is likely to cause confusion. *Guthrie*

*Healthcare Sys. v. ContextMedia, Inc.*, 826 F.3d 27, 37 (2d Cir. 2016) (citing cases); *Spin Master Ltd. v. Alan Yuan's Store*, 325 F. Supp. 3d 413, 420 (S.D.N.Y. 2018); *BBK Tobacco & Foods, LLP v. Galaxy VI Corp.*, 408 F. Supp. 3d 508, 520 (S.D.N.Y. 2019).

"The first prong is satisfied by showing that a mark is valid and registered, owned by the registrant, and that the registrant has the exclusive right to use the mark in commerce." *Spin Master*, 325 F. Supp. 3d at 421. A valid certificate of registration of the asserted mark satisfies this standard. *BBK Tobacco & Foods*, 408 F. Supp. 3d at 520.

Once a plaintiff has established that its mark is entitled to protection, courts in this Circuit apply the eight "Polaroid factors" balancing test to determine whether the defendant's use of the mark is likely to cause confusion. *Polaroid Corp. v. Polarad Electronics Corp.*, 287 F.2d 492, 495 (2d Cir. 1961). Because counterfeit marks are inherently confusing, however, "courts in this District generally agree that 'where counterfeit marks are involved, it is not necessary to perform the step-by-step examination of each Polaroid factor because counterfeit marks are inherently confusing.'" *Spin Master*, 325 F. Supp. 3d at 421 (quoting *Fendi Adele S.R.L. v. Filene's Basement, Inc.*, 696 F. Supp. 2d 368, 383 (S.D.N.Y. 2010) (citing cases)); *Topps Co. v. Gerrit J. Verburg Co.*, No. 96-cv-7302 (RWS), 1996 WL 719381, at *6 (S.D.N.Y. Dec. 13, 1996) ("Where the marks are identical, and the goods are also identical and directly competitive, the decision can be made directly without a more formal and complete discussion of all of the *Polaroid* factors.") (citing cases). "The sale of counterfeit goods is sufficient use to establish liability." *Spin Master*, 325 F. Supp. 3d at 422.

Satisfying the first two elements, Plaintiff's SOUPER CUBES Trademarks and SOUPER CUBES Patents are inherently distinctive and are registered with the United States Patent and Trademark Office on the Principal Register. The SOUPER CUBES Trademarks and SOUPER

CUBES Patents have been continuously used since at least 1950, and Plaintiff has and continues to widely market and promote the SOUPER CUBES Trademarks and SOUPER CUBES Patents in the industry and to consumers. Sendowski Decl., ¶ 9. The registrations for the SOUPER CUBES Trademarks are valid, subsisting, and in full force and effect. *Id.* ¶ 4 & Ex. 1. Such registrations constitute prima facie evidence of their validity and of Plaintiff's exclusive right to use the SOUPER CUBES Trademarks pursuant to 15 U.S.C. § 1057(b). Further, Plaintiff has not licensed or authorized Defendants to use the SOUPER CUBES Trademarks, and none of the Defendants is an authorized retailer of genuine SOUPER CUBES Products. *Id.* at ¶ 19.

In this case, Plaintiff has established a likelihood of confusion. Defendants are selling Infringing Products using counterfeit marks identical to or substantially indistinguishable from the SOUPER CUBES Trademarks, and in respect of goods identical to the genuine SOUPER CUBES Products. Due to their long-standing use and wide acceptance by the public, the SOUPER CUBES Trademarks have become widely recognized and associated with high quality SOUPER CUBES Products. The SOUPER CUBES Trademarks are distinctive when applied to the SOUPER CUBES Products. The marks signify to consumers that the products come from Plaintiff and are manufactured to the highest quality standards. Because the counterfeit goods are similar and have identical and similar uses, consumers will be confused and think that Defendants' products are genuine SOUPER CUBES Products or are sponsored or endorsed by Plaintiff. Moreover, Defendants are intentionally using the SOUPER CUBES Trademarks to confuse and deceive the consuming public into thinking that Defendants' Infringing Products are manufactured by or emanate from Plaintiff. Defendants are purposefully attempting to benefit and trade off Plaintiff's goodwill and reputation.

Plaintiff has thus established that it has a reasonable likelihood of success on the merits for

its trademark infringement and counterfeiting claim.

2. Plaintiff Is Likely to Succeed on Its False Designation of Origin Claim.

A plaintiff bringing a false designation of origin claim under 15 U.S.C. § 1125(a) must show that: (1) the plaintiff has a valid, protectable trademark; and (2) a likelihood of confusion will exist as to the origin of the plaintiff's products. *Salvatore Ferragamo S.p.A. v. Does 1-56*, 18-cv-12069 (JPO), 2020 WL 774237, at *2 (S.D.N.Y. Feb. 18, 2020). This is the same test that is used for determining whether trademark infringement has occurred under the Lanham Act. *Spin Master*, 325 F. Supp. 3d at 423. Because the SOUPER CUBES Trademarks are registered marks, and Plaintiff has established a likelihood of success on the merits of their trademark infringement and counterfeiting claim against Defendants, as shown above, a likelihood of success on the merits for Plaintiff's false designation of origin claim is also established.

3. Plaintiff Is Likely Succeed on Its Design Patent Infringement Claim.

The United States Patent Act provides that "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent." 35 U.S.C. § 271(a). Here, Plaintiff is the lawful assignee of all right, title and interest in and to the SOUPER CUBES Patents. Sendowski Decl. ¶ 5. Plaintiff has submitted documentation that Defendants make, use, offer for sale, sell, and/or import into the United States for subsequent sale or use products that infringe directly and/or indirectly the design claimed in the SOUPER CUBES Patents. *Id.* ¶ 18. The submitted documentation shows that an ordinary observer would be deceived into thinking that the Infringing Products are the same as Plaintiff's SOUPER CUBES Products embodying the designs in the SOUPER CUBES Patents. Finally, Plaintiff has not licensed or authorized Defendants to use the SOUPER CUBES Patents, and none of the Defendants are

authorized retailers of genuine SOUPER CUBES Products. *Id.* ¶ 19. Accordingly, Plaintiff is likely to establish a prima facie case of design patent infringement.

#### 4. Plaintiff Is Likely to Succeed on Its New York Unfair Competition Claim.

The elements of an unfair competition claim "under New York common law mirror the Lanham Act claims, except that unfair competition requires an additional showing of bad faith." *Ferragamo*, 2020 WL 774237, at *4 (internal quotations and citations omitted). "The essence of a claim for unfair competition under New York law is that the defendant has misappropriated the labors and expenditures of another in a manner likely to cause confusion or to deceive purchasers as to the origin of the goods." *Spin Master*, 325 F. Supp. 3d at 424 (internal quotations and citations omitted). "'Under New York law, a presumption of bad faith attaches to the use of a counterfeit mark.'" *Ferragamo*, 2020 WL 774237, at *4 (quoting *Philip Morris USA Inc. v. Felizardo*, No. 03-cv-5891, 2004 WL 1375277, at *6 (S.D.N.Y. June 18, 2004)); *Mattel, Inc. v. AnimeFun Store*, 18-cv-8824 (LAP), 2021 WL 765766, at *7 (S.D.N.Y. Feb. 26, 2021) (same); *Spin Master*, 325 F. Supp. 3d at 424 (citing cases).

Because Plaintiff has established a likelihood of success on the merits of its trademark infringement and counterfeiting claim against Defendants, as shown above, bad faith is presumed, and therefore Plaintiff has established a likelihood of success on the merits for its New York Unfair Competition claim.

### D. There Is No Adequate Remedy at Law, and Plaintiff Will Suffer Irreparable Harm in the Absence of Preliminary Relief.

Irreparable harm warranting the issuance of a temporary restraining order exists when a defendant infringes a trademark. Here, because Defendants have made unauthorized use of the SOUPER CUBES IP, Plaintiff has been irreparably harmed and will continue to be so harmed unless the Court enjoins Defendants' infringement.

In the context of trademark infringement, it is well-settled that a trademark owner's loss of goodwill and ability to control its reputation constitutes irreparable harm sufficient to satisfy the preliminary injunction standard. *N.Y.C. Triathlon, LLC v. NYC Triathlon Club, Inc.*, 704 F. Supp. 2d 305, 325 (S.D.N.Y. 2010). When infringement leads to confusion, "the requisite irreparable harm is established as a matter of course." *N.Y.C. Triathlon*, 704 F. Supp. 2d at 325–26 (internal citations omitted). "One of the most valuable and important protections afforded by the Lanham Act is the right to control the quality of the goods manufactured and sold under the holder's trademark." *El Greco Leather Prods. Co. v. Shoe World, Inc.*, 806 F.2d 392, 395 (2d Cir. 1986). As such, the inability of the trademark holder to control the quality of the infringing goods sold constitutes irreparable harm, *3M Co.*, 458 F. Supp. 3d at 192, and monetary damages are likely to be inadequate compensation for such harm. *See also* 5 *Callmann on Unfair Competition, Trademarks and Monopolies* § 23B:4 (4th ed.).

Here, Defendants' unauthorized use of the SOUPER CUBES Trademarks, along with their substantial efforts to mislead and confuse consumers, has irreparably harmed and continues to irreparably harm Plaintiff through diminished goodwill and brand confidence, reputational damage, loss of exclusivity, and loss of future sales. *See* Sendowski Decl. ¶¶ 30–33. The extent of the harm to Plaintiff's reputation and goodwill and the possible diversion of customers due to loss in brand confidence are both irreparable and incalculable, thus warranting an immediate halt to Defendants' infringing activities through injunctive relief. *NYP Holdings v. N.Y. Post Publ'g Inc.*, 63 F. Supp. 3d 328, 341–42 (S.D.N.Y. 2014); *Ferragamo*, 2020 WL 774237, at *5; *see also CJ Prods. LLC v. Snuggly Plushez LLC*, 809 F. Supp. 2d 127, 145 (E.D.N.Y. 2011) (the extent of the harm to a plaintiff resulting from "[i]njecting the market with counterfeit products will not only result in lost sales, but will impair plaintiffs' reputation achieved through considerable time and

effort. This type of harm cannot be redressed by monetary damages available at law.").

Irreparable harm resulting from design patent infringement is demonstrated when "remedies available at law, such as monetary damages, are inadequate to compensate for that injury." *Robert Bosch LLC v. Pylon Manufacturing Corp.*, 659 F.3d 1142, 1148 (Fed. Cir. 2011); *see also Celsis In Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 922, 930 (Fed. Cir. 2012) ("[T]he irreparable harm inquiry seeks to measure harms that no damages payment, however great, could address."); *Natera, Inc. v. NeoGenomics Labs., Inc.*, 106 F.4th 1369, 1378 (Fed. Cir. 2024) ("Where the alleged injury is not quantifiable, the harm cannot be adequately compensated and is irreparable."). At this stage, Plaintiff only needs to show that irreparable harm is likely and causally connected to the alleged infringement. *See, e.g., Natera*, 106 F.4th at 1378; *see also Luminara*, 814 F.3d at 1352. Here, Plaintiff is likely to suffer two primary forms of irreparable harm: (1) loss of customers' goodwill and (2) reputational harm. *See* Sendowski Decl. ¶¶ 30–33. Each of these harms, independently, constitutes irreparable harm and offers a basis on which preliminary relief should be issued. *See, e.g., Aria Diagnostics, Inc. v. Sequenom, Inc.*, 726 F.3d 1296, 1304 (Fed. Cir. 2013) ("Under [the Court of Appeals for the Federal Circuit's] precedent, price erosion, loss of goodwill, damage to reputation, and loss of business opportunities are all valid grounds for finding irreparable harm.") (internal quote and cites omitted).

Defendants' infringement erodes and devalues Plaintiff's rights in the SOUPER CUBES Patents, thereby risking injury to Plaintiff's goodwill and reputation and interfering with Plaintiff's ability to exploit the SOUPER CUBES Patents. *See* Sendowski Decl. ¶¶ 30–33; *See, e.g., Otter Prods., LLC v. Anke Grp. Indus. Ltd.*, No. 2:13-cv-00029, 2013 WL 5910882, at *2 (D. Nev. Jan. 8, 2013) (explaining that absent the requested TRO, plaintiff was likely to suffer "irreparable injury . . . in the form of (a) loss of control over its intellectual property rights; (b) loss of consumer

goodwill; and (c) interference with [plaintiff's] ability to exploit the OTTERBOX trademarks and design patents"); *see also Nike, Inc. v. Fujian Bestwinn Indus. Co., Ltd.*, 166 F. Supp. 3d 1177, 1178–79 (D. Nev. 2016) ("Absent an *ex parte* temporary restraining order and seizure order, Bestwinn's importation, sale, and/or offers to sell its Flyknit Design Infringements will result in immediate and irreparable injury to NIKE in the form of loss of control over its valuable intellectual property rights, loss of consumer goodwill, and interference with NIKE's ability to exploit the Flyknit Design Patents.").

Defendants' infringement of the SOUPER CUBES Patents by sale of the Infringing Products is likely to cause consumer confusion with genuine SOUPER CUBES Products, resulting in harm to Plaintiff's reputation and loss of customers' goodwill. *See* Sendowski Decl., ¶ 31. As established by the Federal Circuit: "[h]arm to reputation resulting from confusion between an inferior accused product and a patentee's superior product is a type of harm that is often not fully compensable by money because the damages caused are speculative and difficult to measure." *Reebok Int'l Ltd. v. J. Baker, Inc.*, 32 F.3d 1552, 1558 (Fed. Cir. 1994).

A causal nexus exists between Defendants' infringement and each of the irreparable harms that Plaintiff is suffering. *See Apple Inc. v. Samsung Elecs. Co.*, 735 F.3d 1352, 1364 (Fed. Cir. 2013). Here, Defendants' infringing use of the SOUPER CUBES Patents in the Infringing Products is a substantial, if not the exclusive, reason for consumer demand of the Infringing Products. *See PCT Int'l Inc. v. Holland Elecs. LLC*, No. CV-12-01797-PHX-JAT, 2015 WL 5210628, at *23–24 (D. Ariz. Sept. 8, 2015), *aff'd*, No. 2016-1061, 2016 WL 4373941 (Fed. Cir. Aug. 16, 2016) ("The Federal Circuit has explained that when the products at issue are 'relatively simple,' in the sense that they have a small number of features, the causal nexus requirement is easier to satisfy because the infringing feature has a large impact on demand for the products").

Finally, because Defendants are individuals and businesses who, upon information and belief, reside in the People's Republic of China or other foreign jurisdictions with no U.S. presence, any monetary judgement is likely uncollectable. *See Robert Bosch*, 659 F.3d at 1156–57 (Fed. Cir. 2011) (reversing denial of permanent injunction where the likely availability of monetary damages was in question, citing *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, No. 2:04-cv-0032, 2007 WL 869576, at *2 (E.D. Tex. Mar. 21, 2007) where "'all three defendants are foreign corporations and that there is little assurance that [plaintiff] could collect monetary damages'"). Furthermore, other district courts have found that money damages were insufficient in similar cases involving foreign infringers. *E.g., Aevoe Corp. v. AE Tech Co., Ltd.*, No. 2:12-cv-0053, 2012 WL 760692, at *5 (D. Nev. Mar. 7, 2012) ("The Court's finding of irreparable harm was not clearly erroneous because it also found that since AE Tech is a foreign corporation, money damages would be insufficient."); *Otter Prods.*, 2013 WL 5910882, at *2 ("[B]ecause Anke has no presence in the United States, it may be difficult or impossible for OtterBox to enforce a monetary judgement against Anke."); *Bushnell, Inc. v. Brunton Co.*, 673 F. Supp. 2d 1241, 1263, 1265 (D. Kan. 2009) (granting preliminary injunction where "the prospect of collecting money damages from a foreign defendant with few to no assets in the United States tips in favor of a finding of irreparable harm"); *Nike*, 166 F. Supp. 3d, at 1179 ("[B]ecause Bestwinn has no presence in the United States, it may be difficult or impossible for NIKE to recover a money judgement against Bestwinn.").

The extent of the harm to Plaintiff's reputation and goodwill and the possible diversion of customers due to loss in brand confidence are both irreparable and incalculable, thus warranting an immediate halt to Defendants' infringing activities through injunctive relief. *NYP Holdings v. N.Y. Post Publ'g Inc.*, 63 F. Supp. 3d 328, 341–42 (S.D.N.Y. 2014); *Ferragamo*, 2020 WL

774237, at *5. For the reasons stated above, Plaintiff will suffer immediate and irreparable injury, loss, or damage if an *ex parte* Temporary Restraining Order and preliminary injunction are not issued. *See* Sendowski Decl. ¶¶ 30–33. As such, Plaintiff should be granted the relief sought in this Application.

### E. <u>The Balancing of Equities Tips in Plaintiff's Favor.</u>

"It would not be a 'hardship' for Defendant to refrain from engaging in unlawful activities related to [the Plaintiff's] brand." *3M Co.*, 458 F. Supp. 3d at 197; *Rovio Ent., Ltd. v. Allstar Vending, Inc.*, 97 F. Supp. 3d 536, 547 (S.D.N.Y. 2015) quoting *WPIX, Inc. v. ivi, Inc.*, 691 F.3d 275, 287 (2d Cir. 2012) ("[i]t is axiomatic that an infringer ... cannot complain about the loss of ability to offer its infringing product."). Thus, "[w]hen considering the balance of hardships between the parties in infringement cases, courts generally favor the trademark owner." *Krause Int'l Inc. v. Reed Elsevier, Inc.*, 866 F. Supp. 585, 587–88 (D.D.C. 1994). This is because "'[o]ne who adopts the mark of another for similar goods acts at his own peril,' since he has no claim to the profits or advantages thereby derived." *Burger King Corp. v. Majeed*, 805 F. Supp. 994, 1006 (S.D. Fla. 1992) (internal quotation marks omitted). Therefore, the balance of harms "cannot favor a defendant whose injury results from the knowing infringement of the plaintiff's trademark." *Malarkey-Taylor Assocs., Inc. v. Cellular Telecomms. Indus. Ass'n*, 929 F. Supp. 473, 478 (D.D.C. 1996); *Estee Lauder, Inc. v. Watsky*, 323 F. Supp. 1064, 1068 (S.D.N.Y. 1970) ("To the plaintiff its name is at stake, and continued injury to its reputation and good will would be a far more serious blow to it than the curtailment of the sale by the defendants would be to them.").

Similarly, Defendants are entitled to little equitable consideration as willful patent infringers. Defendants were aware of the risks when they engaged in design patent infringement, and in such circumstances, courts refuse to assign any "harm" to a defendant. *See Celsis in Vitro*,

664 F.3d at 931 ("the preliminary record suggests that LTC's losses were the result of its own calculated risk in selling a product with knowledge of Celsis' patent")

As Plaintiff has demonstrated, Defendants have been profiting from the sale of Infringing Products. Thus, the balance of equities tips decisively in Plaintiff's favor.

### F. Issuance of the Injunction Is in the Public Interest.

Federal courts have long held that in addition to protecting the property rights of an individual, intellectual property laws are also concerned with the protection of the public from being deceived. *N.Y.C. Triathlon*, 704 F. Supp. 2d at 344 ("[T]he public has an interest in not being deceived—in being assured that the mark it associates with a product is not attached to goods of unknown origin and quality.") (internal citations omitted); *NYP Holdings*, 63 F. Supp. 3d at 342 (noting consumers have a "protectable interest in being free from confusion, deception and mistake"); *see also Shashi, Inc. v. Ramada Worldwide*, *Inc.*, No. 7:05-cv-00016, 2005 WL 552593, at *4 (W.D. Va. Mar. 1, 2005) ("It is in the best interest of the public for the court to defend the integrity of the intellectual property system and to prevent consumer confusion.").

Here, an injunction is in the public interest because it will stop Defendants from violating federal intellectual property law and prevent consumer confusion. Further, the public is currently under the false impression that Defendants are operating their Defendant Internet Stores with Plaintiff's approval and endorsement. An injunction serves the public interest in this case because "[t]rademark laws exist to protect the public from confusion." *Hermes Int'l v. Lederer de Paris Fifth Ave., Inc.*, 219 F.3d 104, 107–08 (2d Cir. 2000)*; see also, e.g., CJ Prods v. Concord Toys*, 10–cv–5712 (ENV)(JO), 2011 WL 178610, at *6 (E.D.N.Y. Jan. 19, 2011) ("In light of the significant public policy concerns regarding the sale and distribution of children's toys without any assurance or labels indicating that defendants' products comply with federal and state health and

safety requirements, the public interest strongly favors plaintiffs.").

In this case, the injury to the public is significant, and the injunctive relief that Plaintiff seeks is specifically intended to remedy that injury by dispelling the public confusion created by Defendants' actions. The public has the right not to be confused and defrauded as to the source of the goods and services offered by Defendants, or as to the identity of the owner of trademarks and service marks used in connection with those goods and services. Unless Defendants' unauthorized use of the SOUPER CUBES IP is enjoined, the public will continue to be confused and misled by Defendants' conduct.

## IV. THE EQUITABLE RELIEF SOUGHT IS APPROPRIATE

The scope of the injunctive relief sought by Plaintiff here is appropriate both under Rule 65, as well as under the Lanham Act, which authorizes courts to issue injunctive relief "according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark." 15 U.S.C. § 1116(a). The Patent Act also authorizes courts to issue injunctive relief "in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable." 35 U.S.C. § 283.

### A. A Temporary Restraining Order Immediately Enjoining Defendants' Unlawful Use of Plaintiff's Intellectual Property Is Appropriate.

Plaintiff requests a temporary injunction requiring Defendants to immediately cease all use of the SOUPER CUBES IP on or in connection with all Defendant Internet Stores. Such relief is necessary to stop the ongoing harm to the SOUPER CUBES IP and associated goodwill, as well as harm to consumers, and to prevent Defendants from continuing to benefit from their unauthorized use of the SOUPER CUBES IP.

The need for *ex parte* relief is magnified in today's global economy where counterfeiters

can operate over the internet in an anonymous fashion. Plaintiff is currently unaware of both the true identities and locations of the Defendants, as well as other Defendant Internet Stores used to distribute Infringing Products.

Many courts in this district have authorized immediate injunctive relief in similar cases involving the unauthorized use of trademarks and counterfeiting. *See, e.g.*, *Weili Fang*, 2021 WL 1249631; *Lindsey Adelman Studio*, 2019 WL 7599931; *Cengage Learning*, 2018 WL 2244461; *Kipling Apparel Corp.*, 2016 WL 8814345 (S.D.N.Y. Feb. 12, 2016).

### B. Preventing the Fraudulent Transfer of Assets Is Appropriate.

Plaintiff also requests an *ex parte* restraint of Defendants' assets so that Plaintiff's right to an equitable accounting of Defendants' profits from sales of Infringing Products is not impaired. Plaintiff has good cause to suspect the Defendants are residents of China or other foreign jurisdictions. *See* Declaration of Yingchun Hou ("Hou Decl.") Ex. 1, Sendowski Decl. Ex. 3. In Plaintiff's experience, foreign merchants selling counterfeit products will operate multiple credit card and third-party payment processing accounts, so they continue operating in spite of efforts to prevent their illegal actions. Sendowski Decl. ¶ 27. Further, counterfeiters such as Defendants will typically maintain offshore bank accounts and will move from their third-party payment processing accounts to offshore bank accounts outside the jurisdiction of this Court. *Id.* Issuing an *ex parte* restraint will ensure Defendants' compliance. If such a restraint is not granted, Defendants may disregard their responsibilities and fraudulently transfer financial assets to overseas accounts before a restraint is ordered.

Courts have the inherent authority to issue a prejudgment asset restraint when a complaint seeks relief in equity. *Cengage Learning*, 2018 WL 2244461, at *3 ("where plaintiffs seek both equitable and legal relief in relation to specific funds, a court retains its equitable power to freeze

assets") (internal quotations and citations omitted); *Animale Grp. Inc. v. Sunny's Perfume Inc.*, 256 F. App'x 707, 709 (5th Cir. 2007); *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 987 (11th Cir. 1995); *Reebok Int'l Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 559 (9th Cir. 1992). In addition, because Plaintiff has shown a strong likelihood of succeeding on the merits of its trademark infringement and counterfeiting claim, the Lanham Act provides that Plaintiff is entitled, "subject to the principles of equity, to recover . . . defendant's profits." 15 U.S.C. § 1117(a)(1). Plaintiff's Complaint seeks, among other relief, that Defendants account for and pay to Plaintiff all profits realized by Defendants by reason of Defendants' unlawful acts. *See Klipsch Grp., Inc. v. Big Box Store Ltd.*, No. 12-cv-6283(AJN), 2012 WL 4901407, at *2 (S.D.N.Y. Oct. 11, 2012) ("Courts in this district have exercised their equitable powers in Lanham Act cases to restrain assets to preserve the return of profits derived from the sale of counterfeit goods and to insure counterfeiting [p]laintiffs the accounting to which they are entitled.") (collecting cases). Therefore, this Court has the inherent equitable authority to grant Plaintiff's request for a prejudgment asset freeze to preserve the relief sought by Plaintiff.

This District previously entered an asset restraining order in a trademark infringement case brought by textbook publishers against defendants engaged in the sale of counterfeit textbooks through online marketplaces. *Cengage Learning*, 2018 WL 2244461, at *3–4. The Court recognized that it was explicitly allowed to issue a restraint on assets for lawsuits seeking equitable relief. *Id.* at *3 (citing *Grupo Mexicano*, 527 U.S. at 329–33); *see also Gucci America, Inc. v. Weixing Li*, No. 10-cv-4974 (RJS), 2011 WL 6156936, at *3 (S.D.N.Y. Aug. 23, 2011), *aff'd in relevant part and vacated on other grounds*, 768 F.3d 122 (2d Cir. 2014) (same); *see also Balenciaga America, Inc. et al., v. Dollinger et al.*, No. 10-cv-2912 (LTS), 2010 WL 3952850, at *7 (S.D.N.Y. Oct. 8, 2010). Because the publishers sought an accounting of the defendants' profits,

an equitable remedy, the Court found that it had the authority to freeze the defendants' assets. *Cengage Learning*, 2018 WL 2244461, at *3–4.; *see also Animale Grp. Inc.*, 256 F. App'x at 709; *Levi Strauss & Co.*, 51 F.3d at 987; *Reebok Int'l Ltd*, 970 F.2d at 559; *CSC Holdings, Inc. v. Redisi*, 309 F.3d 988, 996 (7th Cir. 2002) ("Since the assets in question here were the profits the [defendants] made by unlawfully stealing [plaintiffs'] services, the freeze was appropriate and may remain in place pending final disposition of this case."); *accord* 4 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 30:40 (5th ed. 2025).

Plaintiff has shown a likelihood of success on the merits, an immediate and irreparable harm suffered as a result of Defendants' activities, and that, unless Defendants' assets are frozen, Defendants will likely hide or move their ill-gotten funds to offshore bank accounts. Accordingly, the granting of an injunction preventing the transfer of Defendants' assets is proper.[3]

### C. <u>Plaintiff Is Entitled to Expedited Discovery.</u>

"A party may seek expedited discovery before the Federal Rules of Civil Procedure Rule 26(f) conference when authorized by a court order." *Next Phase Distrib., Inc. v. John Does 1–27*,

[3] Alternatively, the Court may grant a pre-judgment attachment of Defendants' domestic assets under Federal Rule of Civil Procedure 64 and N.Y. C.P.L.R. § 6212(a). Rule 64 authorizes"[e]very remedy . . . that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment." Fed. R. Civ. P. 64(a). The rule specifically mentions attachment as an available remedy. Fed. R. Civ. P. 64(b). And the C.P.L.R. permits attachment upon a showing "that there is a cause of action, that it is probable that the plaintiff will succeed on the merits, that one or more grounds for attachment provided in section 6201 exist, and that the amount demanded from the defendant exceeds all counterclaims known to the plaintiff." C.P.L.R. § 6212(a). Here, Plaintiff will succeed on the merits for the reasons given above, and attachment is appropriate for either of at least two reasons. First, C.P.L.R. § 6201(1) authorizes attachment if "the defendant is a nondomiciliary residing without the state, or is a foreign corporation not qualified to do business in the state." And second, C.P.L.R. § 6201(3) permits attachment if "the defendant, with intent to defraud his creditors or frustrate the enforcement of a judgment that might be rendered in plaintiffs favor, has assigned, disposed of, encumbered or secreted property, or removed it from the state or is about to do any of these acts." Here, the Defendants appear to be foreign entities, and there is a substantial risk that they will remove assets outside of the jurisdiction absent injunctive relief or attachment.

284 F.R.D. 165, 171 (S.D.N.Y. 2012) (citing Fed. R. Civ. P. 26(d)(1)). "Courts in this District use a flexible standard of reasonableness and good cause when considering whether to grant an order." *Cengage Learning*, 2018 WL 2244461 at *4 (citing *Next Phase Distrib.*, 284 F.R.D. at 171.) (internal quotations omitted). Furthermore, courts have broad power over discovery and may permit discovery to aid in the identification of unknown defendants. *See* Fed. R. Civ. P. 26(b)(2); *adMarketplace, Inc. v. Tee Support Inc.*, No. 13-cv-5635(LGS), 2013 WL 4838854, at *2 (S.D.N.Y. Sept. 11, 2013) (collecting cases).

As described above, Defendants are using third-party payment processors such as Visa, PayPal, AliPay and Western Union, which helps to increase their anonymity by interposing a third party between the consumer and Defendants. Without being able to discover Defendants' bank and payment system accounts, any asset restraint would be of limited value because Plaintiff would not know the entities upon which to serve the order.

Plaintiff respectfully requests expedited discovery to discover bank and payment-system accounts Defendants use for their counterfeit sales operations. The discovery requested on an expedited basis in Plaintiff's Proposed Temporary Restraining Order has been limited to include only what is essential to prevent further irreparable harm. Discovery of these financial accounts so that they can be frozen is necessary to ensure that these activities will be contained.

Under Federal Rule of Civil Procedure 65(d)(2)(C), this Court has the power to bind any third party who is in active concert with the Defendants that is given notice of the order to provide expedited discovery in this action. As Defendants have engaged in many deceptive practices to hide their identities and accounts, Plaintiff's seizure and asset restraint in the Temporary Restraining Order may have little meaningful effect without the requested relief. Accordingly, Plaintiff respectfully requests that expedited discovery be granted.

### D. Service of Process by E-mail and/or Electronic Publication Is Warranted in this Case.

Pursuant to Federal Rule of Civil Procedure 4(f)(3), Plaintiff requests authorization to serve process by e-mail and by electronically publishing a link to the Complaint, the Temporary Restraining Order, the papers supporting this Application, and any other relevant documents on a website to which the Defendant Internet Stores will be transferred (the "Link"). Plaintiff submits that providing notice via electronic publication and e-mail, along with any notice that Defendants receive from the online marketplace providers and payment processors, is reasonably calculated under all circumstances to apprise Defendants of the pendency of the action and afford them the opportunity to present their objections.

Federal Rule of Civil Procedure 4(f)(3) allows this Court to authorize service of process by any means not prohibited by international agreement. *See Google LLC v. Doe 1*, No. 25-cv-10440 (JSR), 2026 WL 353660, at *2 (S.D.N.Y. Feb. 9, 2026); *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1014 (9th Cir. 2002). This Court has held that service through email and website publication is "reasonably calculated, under all the circumstances, to apprise [defendants] of the pendency of the action." *Google LLC*, 2026 WL 353660, at *2 (quoting *Kelly Toys Holdings, LLC. v. Top Dep't Store*, No. 22-cv-558 (PAE), 2022 WL 3701216, at *9 (S.D.N.Y. Aug. 26, 2022)). Further, the Ninth Circuit in *Rio Properties* held, "[w]ithout hesitation," that e-mail service of an online business defendant "was constitutionally acceptable." 284 F.3d at 1017. The Court reached this conclusion, in part, because the defendant conducted its business over the internet, used e-mail regularly in its business, and encouraged parties to contact it via e-mail. *Id.*

Likewise, in Plaintiff's counsel's experience with similar defendants in other matters, Defendants are almost certain to regularly rely on and use the e-mail addresses that the Defendants provide to Amazon, eBay, Shein, Temu, Walmart, and other third-party payment processers to

communicate concerning monies received through the Defendant Internet Stores. Thus, obtaining such e-mail addresses from Amazon, eBay, Shein, Temu, and Walmart is often the fastest and most direct way to get into contact with individuals and entities like the Defendants that are engaged in the sale of Infringing Products. *See* Sendowski Decl., ¶ 20. Indeed, Defendants appear to rely primarily on electronic communications to communicate with their customers, demonstrating the reliability of this method of communication by which the Defendants may be apprised of the pendency of this action. Authorizing service of process via e-mail and/or electronic publication will benefit all parties and the Court by ensuring that Defendants receive prompt notice of this action, thus allowing this action to move forward expeditiously.

1. Defendants' Addresses for Service Are Not Known.

Plaintiff has good cause to suspect that Defendants are residents of China, Morocco, and Turkey. *See* Hou Decl. Ex.1; Sendowski Decl. Ex. 3. The United States, the People's Republic of China, Morocco, and Turkey are all signatories to the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (the "Hague Convention"). *See* Tom Decl., ¶ 4. However, according to Article 1 of The Hague Convention, the "convention shall not apply where the address of the person to be served with the document is not known." Tom Decl., ¶ 4 and Ex. 3; *see also Google LLC*, 2026 WL 353660, at *1 (finding plaintiff was not bound by Hague Convention after it made reasonable efforts to locate defendants and could serve defendants via electronic methods after *Smart Study Co. v. Shenzhenshixindajixieyouxiangongsi*, 164 F.4th 164 (2d Cir. 2025); *Kelly Toys Holdings*, 2022 WL 3701216, at *9 (finding plaintiff was not bound by Hague Convention after it made reasonable efforts to locate defendants); *Zuru (Singapore) Pte., Ltd. v. The Individuals, Corporations, Limited Liability Companies, Partnerships, and Unincorporated Associated Identified on Schedule A*

*Hereto*, No. 22-cv-2483 (LGS), 2022 WL 14872617, at *2 (S.D.N.Y. Oct. 26, 2022) (finding electronic service was proper under Rule 4(f)(3) when defendants did not provide accurate physical addresses); *Cengage Learning*, 2018 WL 2244461, at *4–5 (same).

In this case, Plaintiff, through its representatives, investigated the feasibility of effecting service of physical documents on the hundred fifty-eight (158) Defendants utilizing the Amazon, eBay, Shein, Temu, or Walmart marketplace platforms. Specifically, Plaintiff and its representatives have utilized a specialized investigative firm, Panoramic Consulting Ltd. ("Panoramic"), with over 15 years of experience researching online merchants in China, Vietnam and other countries in Asia. Hou Decl. ¶¶ 3–4. Panoramic conducted a multi-layered inquiry into each Defendant's purported physical address and contact information as listed on their seller/store profile pages or invoices. *Id.* ¶ 5. The Panoramic investigators performed comprehensive searches using multiple independent data sources, including Tianyancha, a major platform aggregating Chinese government registration data and corporate records, and Baidu.com, China's leading and largest search engine and mapping systems, which compiles business information from authoritative national databases. *Id.* ¶¶ 6–7.

In addition to researching the listed addresses of these Defendants, Panoramic researched and attempted to identify each store's registered telephone number. *Id.* ¶ 8. In some instances, Panoramic contacted the phone numbers listed on the Defendants' home page, or where a number was not listed, the telephone number identified through additional research tied to the listed physical addresses. *Id*. Panoramic attempted to contact these Defendants at their listed telephone numbers because businesses in China that do not provide or confirm a working telephone number for their businesses cannot be served, as couriers in China will require a working phone number to ensure their service attempt can be completed. *Id.* ¶ 18. Similarly, it is very difficult to confirm

the address for any business that does not provide or confirm its telephone numbers, since mailing services in China will be unable to confirm or verify the listed address without a telephone number. *Id.*

Based on Panoramic's investigation, the listed addresses for the defendant stores are not usable for service, and the investigation team was unable to identify other verified addresses to use for service of process. *Id.* ¶ 19.

In particular, eighty-two (82) of the defendant stores do not list any address or phone number. Panoramic attempted to identify a company or business associated with each store and any phone numbers listed for them to contact them about a service address but was unable to find such information for any of these defendant stores. *Id* ¶ 10. For seven (7) other defendant stores, Panoramic researched their listed addresses but could not identify any business or company listed at that address because the address was incomplete and/or missing a room number. *Id* ¶ 11. Further, Panoramic attempted to research but could not find a valid phone number for three (3) of these stores to confirm their location or identify the associated business or company. *Id.* For the other four (4) stores, Panoramic either received a phone recording that the phone numbers were busy, or their calls and text messages were not answered by the businesses, and the businesses did not leave a message that provided another way to contact them. *Id.* Based on Panoramic's experience, it is not possible to serve a business in China and elsewhere without knowing the correct business or company name, and the store names used by e-commerce merchants are not sufficient alone to identify a related business or company when attempting service. *Id* ¶ 12. Accordingly, identifying and confirming the related business name for an e-commerce store is necessary before that party can be served properly. *Id.*

For eleven (11) other defendant stores, Panoramic was able to locate and contact phone

numbers either listed on Tianyancha or elsewhere. *Id* ¶ 13. However, for all 11 stores, the answering person either denied that their business had any affiliation with the defendant store or informed Panoramic that the relevant store was not located at the listed address and refused to provide any updated information or identify their role at the company. *Id.* Accordingly, Panoramic was unable to verify that any of the listed addresses for these 11 stores are valid for service. *Id.* Eight (8) other defendant stores listed a phone number that was not associated with the defendant stores listed at that address. *Id* ¶ 14. Further, Panoramic was unable to identify any valid phone numbers for any of these defendant stores, so it could not confirm any addresses where these stores could be served. *Id.*

Nine (9) other defendant stores had phone numbers that could not be confirmed despite Panoramic's numerous attempts to contact the phone numbers listed in these stores' business registrations or listed on Tianyancha or elsewhere. *Id* ¶ 15. For these stores, Panoramic's calls and text messages were not answered by the businesses, and the businesses did not leave a message that provided another way to contact them. *Id.* In addition, twelve (12) other defendant stores had phone numbers that could not be confirmed despite Panoramic's attempts to contact the phone numbers listed in these stores' business registrations or listed on Tianyancha or elsewhere. *Id* ¶ 16. For these stores, Panoramic received a phone recording stating that the number was busy, out of service, or does not exist. *Id.* For the remaining twenty-nine (29) defendant stores, the defendant stores did not list a phone number on their storefront page, and Panoramic's team could not find a phone number for the store or an associated businesses company through their investigation efforts. *Id* ¶ 17. In Panoramic's experience, businesses that do not provide or confirm a working telephone number for their businesses cannot be served, as couriers in China will require a working phone number to ensure their service attempt can be completed. *Id* ¶ 18. Similarly, it is very

difficult to confirm the address for any business that does not provide or confirm its telephone numbers, since mailing services in China will be unable to confirm or verify the listed address without a telephone number. *Id.*

Because Defendants provide incomplete or inaccurate information about their location and contact information, their locations are not known, and Plaintiff will not be able to notify the Defendants of this action or serve them without using alternative methods of service. Absent the ability to serve Defendants in this manner, Plaintiff will almost certainly be left without the ability to pursue this action because no other contact information is available for the Defendants. Indeed, Defendants are likely to have listed incorrect names and physical address information precisely for the purpose of concealing their locations and avoiding liability for their unlawful conduct. *See* Sendowski Decl. ¶ 24.

A number of courts, including in this District, have held that alternative forms of service pursuant to Rule 4(f)(3), including e-mail service, are appropriate and may be the only means of effecting service of process "when faced with an international e-business scofflaw." *Rio Props.*, 284 F.3d at 1018; s*ee also Google LLC*, 2026 WL 353660, at *1–2; (permitting alternative service by electronic means as part of a preliminary injunction); *Cengage Learning*, 2018 WL 2244461, at *5 (finding email service appropriate on defendants who provided no true names or physical addresses and thus were not known)); *Kelly Toys*, 2022 WL 3701216, at *9–10 (affirming electronic service on online retailers who hid their location and instead provided false addresses).

As such, federal courts, including in this District, have permitted alternative service of process in matters involving counterfeiting and trademark infringement. *See WowWee Grp. Ltd. v. Haoqin*, No. 17-cv-9893, 2019 WL 1316106, at *2 (S.D.N.Y. Mar. 22, 2019) (upholding electronic service on online merchants who were "anonymous individuals or businesses . . . that

traffic in counterfeit goods" and whose identities consist of "only a username and corresponding email address"); *Cengage Learning*, 2018 WL 2244461, at *5 (permitting service by e-mail on foreign defendants where defendants did not provide true legal names or physical addresses on their online storefronts).

Furthermore, Rule 4 does not require that a party attempt service of process by other methods enumerated in Rule 4(f) before petitioning the court for alternative relief under Rule 4(f)(3). *Rio Props.*, 284 F.3d at 1014-15. As the Ninth Circuit explained in *Rio Properties*, Rule 4(f) does not create a hierarchy of preferred methods of service of process. *Id.* at 1014. To the contrary, the plain language of the Rule requires only that service be directed by the court and not be prohibited by international agreement. There are no other limitations or requirements. *Id.* Alternative service under Rule 4(f)(3) is neither a "last resort" nor "extraordinary relief," but is rather one means among several by which an international defendant may be served. *Id.* at 1015. As such, this Court may allow Plaintiff to serve the Defendants via electronic publication and/or e-mail.

2. <u>Defendants' Infringements of Plaintiff's Intellectual Property Create Exigent Circumstance for Service.</u>

Further, the nature of Plaintiff's claims—that anonymous online merchants are actively infringing upon its intellectual property—present exigent circumstances that justify alternative service of certain filings and orders upon the infringing defendants. Article 15 of the Hague Convention expressly permits a judge to order "in case of urgency, any provisional or protective measures," Hague Conv., Art. 15. The 1993 Advisory Committee Notes to Rule 4 expressly acknowledge that the Hague Convention does authorize "special forms of service in cases of urgency if convention methods will not permit service within the time required by the circumstance" and that "[i]n such cases, the court may direct a special method of service not

explicitly authorized by international agreement if not prohibited by the agreement." Fed. R. Civ. P. 4. Accordingly, in similar cases involving counterfeiting by foreign merchants operating online stores, courts in this District have acknowledged the need for timely service and have permitted electronic service of certain documents and orders under Rule 4(f)(3). *See ABC v. DEF*, No. 24-cv-8341 (DLC), 2024 WL 5168624, at *2 (S.D.N.Y. Dec. 13, 2024) (acknowledging that ongoing counterfeit activity creates exigencies that justify e-mail service of temporary restraining order and related orders); *Intersell Ventures, LLC v. 1688 Factory Direct Store Store*, No. 25-cv-408, 2025 WL 485715, at *6 (S.D.N.Y. Feb. 11, 2025) (stating exigencies of online counterfeiting justified temporary restraining order permitting electronic service of order and related documents on all defendants); *Parfum Francis Kurkdjian SAS v. Dongguan Laiqu Gems Handcraft Co.*, No. 25-cv-2732 (MMG), 2025 WL 1276618, at *3 (S.D.N.Y. Apr. 29, 2025) (granting temporary restraining order against online merchants defendants and permitting electronic service of order on those defendants).

The proposed Temporary Restraining Order provides for issuance of a single original summons[4] in the name of "THE INDIVIDUALS, CORPORATIONS, LIMITED LIABILITY COMPANIES, PARTNERSHIPS, AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A HERETO" that shall apply to all Defendants in accordance with Federal Rule of Civil Procedure 4(b).

In summary, Plaintiff respectfully submits that service of process by e-mail and by the creation of the Link is reasonably calculated under all circumstances to appraise Defendants of the pendency of the action and afford them the opportunity to present their objections, if any. Plaintiff,

---

[4] The Advisory Committee Notes to the 1993 Amendment to Rule 4(b) state, "If there are multiple defendants, the plaintiff may secure issuance of a summons for each defendant, or may serve copies of a single original bearing the names of multiple defendants if the addressee of the summons is effectively identified." Fed. R. Civ. P. 4(b) advisory committee notes (1993).

therefore, requests permission to serve the Summons, Complaint, the Order to Show Cause (upon entry), and any supporting papers by e-mail and publication of the Link.

## V. A MODEST BOND SHOULD SECURE THE INJUNCTIVE RELIEF

The posting of security upon issuance of a temporary restraining order or preliminary injunction is vested in the Court's sound discretion. *Rathmann Group v. Tanenbaum*, 889 F.2d 787, 789 (8th Cir. 1989); *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 421 (4th Cir. 1999); Fed. R. Civ. P. 65(c). Because of the strong and unequivocal nature of Plaintiff's evidence of counterfeiting, infringement, and unfair competition, Plaintiff respectfully requests that this Court require Plaintiff to post a bond of no more than Five Thousand U.S. Dollars ($5,000.00). Plaintiff submits that a bond in such amount is fair and reasonable under the circumstances and is consistent with the bond amounts required by courts in similar cases. *See, e.g., Kipling Apparel Corp.*, 2016 WL 8814345, at *3 ($5,000 bond); *Cengage Learning*, 2018 WL 2244461, at *6 ($2,500 bond); *Weili Fang*, 2021 WL 1249631, at *7 ($1,000 bond).

## VI. CONCLUSION

Plaintiff's business, its SOUPER CUBES brand, and consumers are being irreparably harmed by online counterfeiters. Without entry of the requested relief, the sale of Infringing Products will continue to lead prospective purchasers and others to believe that Defendants' products have been manufactured by or emanate from Plaintiff. Therefore, entry of an *ex parte* order is necessary to protect Plaintiff's trademark and patent rights, to prevent further harm to Plaintiff and the consuming public, and to preserve the status quo. In view of the foregoing and consistent with previous similar cases, Plaintiff respectfully requests that this Court enter a Temporary Restraining Order in the form proposed and set a status hearing before the expiration of the Temporary Restraining Order at which hearing Plaintiff intends to present a motion for

preliminary injunction.

Dated: May 6, 2026

Respectfully submitted,

**BOIES SCHILLER FLEXNER LLP**

*/s/ Christopher Tom*
Christopher Tom, Esq.
S.D.N.Y. Bar No. CT1983
55 Hudson Yards
New York, NY 10001
(212) 446-2300
ctom@bsfllp.com

*Counsel for Plaintiff, SOUPER PRODUCTS, LLC*